**Susan HERTEL, by her attorney-in-fact Carl HERTEL, Plaintiff/Appellant,**

v.

**NATIONSBANK N.A. n/k/a Bank of America, and William A. McDowell, Jr., Defendants/Respondents.**

No. ED 78227.

Missouri Court of Appeals, Eastern District, Division One.

Feb. 6, 2001.

Michael A. Wolff, Charles A. Seigel III, St. Louis, MO, for appellant.

David S. Slavkin, Mark G. Holden, St. Louis, MO, for Nationsbank N.A.

Jerry J. Murphy, Daniel G. Tobben, St. Louis, MO, for William A. McDowell, Jr.

MARY RHODES RUSSELL, Judge.

Susan Hertel ("Beneficiary")[1] appeals from the grant of summary judgment entered by the Circuit Court of the City of St. Louis in favor of Nationsbank N.A. n/k/a Bank of America and William A. McDowell, Jr. ("Trustees"). Beneficiary asserts that Trustees should not be allowed to consider the financial resources available to her in determining what amount, if any, should be paid to her from the principal of a trust created by her father, Robert Tuhro ("Trustor"). We find there are no material facts in dispute, and Trustees are entitled, as a matter of law, to consider Beneficiary's financial resources in that Trustor did not intend to create an absolute gift of support. We affirm.

The facts of this case are largely undisputed. Since the early 1980's, Beneficiary has suffered from multiple sclerosis. Trustor, aware of his daughter's illness, established a trust over his assets in December 1991 and executed a Trust Agreement detailing the administration of the trust. In essence, the Trust Agreement provided that when Trustor died, his assets were to be divided into two equal trusts, one for Beneficiary and the other for her children from a previous marriage. Beneficiary's trust provided that all income is to be paid to her and at her death, the principal is to be distributed to her children's trust. Trustor died in December 1994.

Since being diagnosed with multiple sclerosis, Beneficiary's health has steadily declined. She has been unable to drive, work, or walk since the late 1980's. As her condition has worsened, she has had multi-day hospital stays, including a 10–week hospital stay in 1995 after suffering an aneurysm. Beneficiary was placed in a skilled-care nursing facility in July 1998, where she continues to reside.

As her medical and nursing facility bills accumulated, income from the trust was not adequate to pay the bills, including $21,000 due the nursing home. Although Beneficiary received an inheritance from her grandmother of almost $156,000, she requested that Trustees encroach upon the trust principal, which was valued at over $400,000, to pay her medical expenses. Trustees asked Beneficiary to provide details of her financial resources before determining whether to encroach upon the principal. When the information was not forthcoming, Trustees denied her request.

---

1. Beneficiary's husband, Carl Hertel, serves as her attorney-in-fact.

Beneficiary filed suit against Trustees for breach of trust and breach of fiduciary duties, claiming Trustees were obligated, under the terms of the trust, to encroach on the principal to pay her medical bills without considering her other financial resources. Trustees counterclaimed for a declaratory judgment that would authorize them to consider the financial resources available to Beneficiary under the terms of the trust.

Both Beneficiary and Trustees moved for summary judgment on the counterclaim based upon their independent interpretations of the trust. The trial court granted summary judgment in favor of Trustees on their counterclaim, agreeing with Trustees that the terms of the trust authorize consideration of other financial resources. Beneficiary timely filed her notice of appeal.

Beneficiary, in her sole point on appeal, claims the trial court erred in granting summary judgment in favor of Trustees. Beneficiary claims she was entitled to judgment as a matter of law because the trust does not authorize Trustees to consider Beneficiary's other financial resources when deciding whether to encroach upon the principal.

■ When considering the grant of a summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The party opposing summary judgment is given the benefit of all reasonable inferences from the record. *Id.*

■ The standard of review for a summary judgment is essentially *de novo* because the propriety of summary judgment is purely a matter of law. *Id.* Summary judgment is proper in cases where the movant shows that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Id.*

■ The issue in this case is whether a trustee has the right to consider the other resources of a beneficiary when there is a request to invade the principal of a trust. To resolve this issue, the limited case law in this area has developed the following test: does the trust constitute an absolute gift of support and maintenance, or is the gift of income coupled with a provision that the principal may be invaded in case of need? *Nationsbank, N.A. v. Tegethoff*, 18 S.W.3d 22, 26 (Mo.App.2000) (*citing Winkel v. Streicher*, 365 Mo. 1170, 295 S.W.2d 56, 61 (1956)).

■ If the trust is an absolute gift, then the private income of the beneficiary cannot be considered. *Id.* (*citing Winkel*, 295 S.W.2d at 61). If, however, the income gift includes principal encroachment based on need, then a beneficiary's private income must be considered in determining whether such need exists. *Id.* (*citing Winkel*, 295 S.W.2d at 61).

■ In order to make this determination we look to the language of the trust and the circumstances surrounding its creation. *Id.* "The paramount rule of construction in determining the meaning of trust provisions is that the [trustor's] intent is controlling." *Feinberg v. Adolf K. Feinberg Hotel Trust*, 922 S.W.2d 21, 25 (Mo.App.1996). We ascertain the intent of Trustor from consideration of the trust instrument as a whole. *Id.*

In reviewing the trust instrument, its various provisions support a finding that Trustor did not intend an absolute gift, but rather conditioned encroachment of the principal upon a showing of need.

The trust agreement addresses encroachment of the principal in Article IV, section 4.00 as follows:

> [T]he Trustees shall have power in their discretion to encroach upon the principal of this share of the trust ·estate during the life of Grantor's daughter for her health, education, maintenance and support and such encroachments may be

made from time to time and in such amounts as the Trustees may consider necessary or advisable under the circumstances.

We interpret this provision to grant Trustees the power to encroach upon the principal in their discretion. Use of the word "may" grants Trustees discretion to encroach upon the principal when and in the amount they consider necessary or advisable.

Further, we find that the "necessary or advisable" language applies to the amount of the encroachment as well as to its timing. Thus, Trustor intended Trustees to exercise their judgment and discretion in determining whether an encroachment for the health, education, maintenance, and support of Beneficiary is necessary or advisable, and whether the amount requested is necessary or advisable.

Trustor also included administrative provisions that further delineate the broad discretion he gave Trustees in the trust agreement. Article V, in pertinent part, provides:

1.00 The Trustees of the trusts shall have full power and authority to do any and all things necessary or proper to manage and control the property of the trust estate and every part thereof ... all of which may be exercised by the Trustees at any time or from time to time upon such terms and conditions as the Trustees may deem best....

. . . .

1.10 Should any doubt or uncertainty arise as to the meaning or interpretation of any word, phrase, clause or part of this trust instrument, due to any claimed ambiguity or choice of words, or any controversy of fact, the Trustees are authorized to determine the proper construction or interpretation and what are the true facts, and any such determination made by the Trustees in good faith shall be binding upon all beneficiaries and other persons concerned.

1.11 The Trustees are further authorized to do all other similar or dissimilar acts and things which the Trustees deem to be for the benefit of the trust estate and the beneficiaries thereof, whether or not such acts and things are hereinabove specifically set forth. In the exercise of any or all of the foregoing powers, all decisions of the Trustees made in good faith shall be conclusive and binding upon all parties in interest.

Sections 1.00 and 1:11 lend support to Trustees' argument that they have the power to request financial information prior to performing their discretionary power of encroachment. Section 1.10 gives Trustees the power to interpret provisions of the trust, and this interpretation is binding upon the beneficiaries.

Moreover, Trustor included a spendthrift provision in Article VIII, section 1.00. This provision provides that beneficiaries under the trust do not have the power to transfer, assign, encumber, or anticipate their interest in the trust property, nor is their interest subject to garnishment or attachment. Essentially, these provisions are meant to prolong the life of the trust principal, by preventing other persons from attaching a beneficiary's interest in the trust before it has been disbursed.

In toto, these provisions evidence Trustor's intent to give Trustees the power and authority to preserve and maintain the trust corpus while also allowing Trustees to accommodate for unforeseen events. The trust provisions grant Trustees the broad discretion to do any act that effectuates management of the trust, including inquiring as to whether encroachment is necessary or advisable. Trustees, however, must be mindful of their duty to act in the best interests of Beneficiary. Section 456.905 RSMo (Cum.Supp.1998).

Our conclusion that it was Trustor's intent to give a gift of income to Beneficiary coupled with a provision that the principal may be invaded only in cases of need, is

also supported by the circumstances surrounding creation of the trust.

First, upon Beneficiary's death, the trust corpus is to be paid over into the trust established for Beneficiary's children from a previous marriage. Given that the trust principal is to be paid over to successor beneficiaries, it is unlikely that Trustor intended an absolute gift.

Beneficiary, however, argues that since Trustor also established and funded a separate trust for his grandchildren, he intended Beneficiary to ultimately deplete her trust. Reviewing the trust document, we find this argument meritless. Article IV, section 4.00 states that upon Beneficiary's death, "this trust shall terminate and any accrued or undistributed income and the principal of this trust" shall be distributed to the Trustor's grandchildren. This section contemplates that the trust corpus will not be depleted.

Second, Trustor was aware of Beneficiary's medical condition at the time he created the trust. Moreover, he knew she would likely incur ongoing medical expenses, and that she might eventually have to move to a nursing home as her disease worsened. Instead of making an outright gift to Beneficiary or clearly stating that the money was to be used to pay Beneficiary's medical expenses, Trustor created a trust wherein Trustees were given a large amount of discretion in its administration. We believe it was Trustor's intent that the trust assets supplement, for as long as possible, Beneficiary's other financial resources for the payment of her medical expenses.

The parties have cited numerous cases involving a variety of trust verbiage to support or distinguish their positions. We need not analyze all of the cited cases as the intent of the trustor primarily governs in every case, and "the variations in language, circumstances and the nature and extent of the property involved, eliminate the desirability of attempting to state a general rule." *Morisseau v. Biesterfeldt,* 345 S.W.2d 210, 213 (Mo.1961).

The recent case decided by this court, *Tegethoff,* does provide instruction here. In *Tegethoff,* the testator created a trust in his will containing a provision allowing the trustees to encroach upon the principal of the trust. 18 S.W.3d at 24. Beneficiaries requested encroachment and the trustee asked them to submit tax returns so that the trustee could determine whether encroachment was necessary. *Id.* at 25. The beneficiaries refused and the trustees filed a petition for instructions. *Id.* The relevant portions of the will provide:

> I hereby authorize the Trustees to encroach upon the principal of the trust estate for the proper maintenance and support of my said wife, and the education, maintenance, and support of my children, or their descendants, if this becomes necessary in the opinion of the Trustees, or to provide against any emergency which may arise afflicting them, or any of them, occasioned by sickness, accident, ill health, affliction, misfortune or otherwise, and they may make such encroachments from time to time and in such amounts as they may consider reasonable and necessary under the circumstances for the purposes stated.

*Id.* at 24.

Our court held that from this language, it was evident that testator intended to give an absolute gift of maintenance and support to his wife, but not to his children or their descendants. *Id.* at 26. Inclusion of the words, "if this becomes necessary in the opinion of the Trustees," manifests testator's intent to limit the power of the trustees to encroach to circumstances when it becomes necessary. *Id.* The court also looked at the circumstances surrounding the will, including a number of successor beneficiaries in line to receive the trust principal. *Id.* at 26–27.

Beneficiary attempts to distinguish the *Tegethoff* trust from the trust presented here, but her arguments are unpersuasive. We find the language in the *Tegethoff* trust

is very similar to the language here. As in *Tegethoff*, Trustor gave Trustees the discretion to encroach on the principal and used conditional language, such as the word "may" in regards to encroachment. Further, stronger discretionary language is used in the trust herein than was used in *Tegethoff*, including "power in their discretion to encroach," "such encroachments may be made," and "as the Trustees may consider necessary or advisable."

Beneficiary, in support of her argument that Trustor intended an absolute gift of support, relies on the Missouri Supreme Court case of *Winkel*, where the testator placed her assets in a trust for her niece, who wanted to encroach on the principal to pay medical expenses. *Winkel*, 295 S.W.2d at 57 58. The issue arose as to whether the trustee could consider other resources before distributing the corpus. *Id.* at 60. The trust provides as follows:

> The trustee shall pay the net income and any part of the corpus of the estate, as he in his sole discretion deems necessary, to my niece, Lillie Striecher or her guardian or to any person or corporation caring for her, for the support and maintenance of my said niece.

*Id.* at 57.

After considering this language and the circumstances surrounding the creation of the trust, the court held that this provision was an absolute gift of support and maintenance. *Id.* at 61–62. The court found the trustee had no discretion as to whether he could pay out on the principal. *Id.* at 62. The only discretion he was given by the trust was limited to determining the amount necessary for support and maintenance. *Id.*

*Winkel* is distinguishable. Whereas the *Winkel* trust provided the trustee "**shall** pay the net income and any part of the corpus," this trust states "such encroachments **may** be made." Moreover, the placement of the discretionary language in *Winkel* suggests the discretion applies only to the amount of principal to be paid out. The discretionary language in the trust herein is applicable to the Trustees' general power to encroach.

Our holding in this case is not inconsistent with *Winkel*. Based upon Trustor's intent, the circumstances surrounding the creation of the trust, and consideration of the trust agreement in its entirety, we find Trustor did not intend an absolute gift. We find that Trustor intended to provide Beneficiary with a gift of income from the trust coupled with a provision that the trust principal may be invaded in case of need. Trustees should not be denied the opportunity to consider beneficiary's other financial resources when deciding whether it is appropriate to encroach upon the trust principal. Our opinion, however, should not be construed so as to require that a beneficiary be destitute before encroachment is deemed necessary. Point denied.

Summary judgment is affirmed.

ROBERT G. DOWD, Jr., P.J. and RICHARD B. TEITELMAN, J., concur.