**James MANTLE, Respondent,**

v.

**Claude BUCHHEIT, Mayor, City of St. Ann, Appellant.**

**No. ED 79315.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 4, 2001.

Shulamith Simon, St. Louis, MO, for Appellant.

Richard A. Barry III, Greg Kloeppel, St. Louis, MO, for Respondent.

CHARLES BLACKMAR, Senior Judge.

James Mantle, formerly a police officer of the City of St. Ann, filed suit in several counts against Mayor Claude Buchheit, alleging that proper procedures were not followed in his termination on June 5, 2000 and seeking reinstatement. Mantle was terminated on that date by order of the mayor with the concurrence of the city marshal. There is no indication that the decision was referred to or considered by the Board of Aldermen. Counsel agreed that there were no factual disputes and that the case could be decided on cross motions for summary judgment for determination of the legal issues. *See Carter v. City of Pagedale,* 982 S.W.2d 744 (Mo.App. E.D.1998). It is therefore our duty to determine the governing law, as we see it, to the undisputed facts. Although we give respectful consideration to the reasons advanced by the court below and to the briefing both here and in the trial court, it is our responsibility to determine the law which governs the undisputed facts. We have been favored by briefing and oral argument of the highest quality. The trial judge entered judgment for the plaintiff Mantle and the defendant Mayor appeals. We affirm.

St. Ann is a city of the fourth class, governed by the provisions of Chapter 79 of the Revised Statutes of Missouri. The pertinent statutes, in effect at the time the plaintiff Mantle was first hired as a police officer and still in effect are as follows:

Section 79.230. The mayor, with the consent and approval of the majority of the members of the board of aldermen, shall have power to appoint a treasurer, city attorney, city assessor, street commissioner and night watchman, and such other officers as he may be authorized by ordinance to appoint.

Section 79.240. . . . The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from such office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all members elected to the board of aldermen, independently of the mayor's approval or recommendation. . . .

St. Ann, Mo., Ordinance No.292, Section 7, in effect at the time the plaintiff Mantle was hired provides as follows:

All police officers employed under the authority of this ordinance shall be selected by the Board of Aldermen of the City of St. Ann. Prior to such selection the Board of Aldermen shall give the Board of Police Commissioners and the Marshal of the City of St. Ann an opportunity to enter such recommendations as they may deem necessary or pertinent. . . .

At a meeting of the Board of Aldermen held October 22, 1979, Mantle and another applicant were interviewed and, on motion on which all aldermen present voted favorably, Mantle was hired as a probationary police officer. The mayor was present and signed the minutes of the meeting, but there is no indication that he voted or otherwise participated in the selection process. Mantle received several promotions over the years and held the rank of lieutenant at the time of his termination.

On May 4, 1998, the Board of Aldermen of St. Ann adopted Ordinance No.2020, Section H of which provided as follows:

Notwithstanding the provisions of Section 79.240, RSMo., the Mayor of the City of St. Ann shall have the right to terminate a police officer of the City of St. Ann after consultation with and concurrence by the Marshal.

On August 8, 1999, Mantle signed an "employee acknowledgment form," which contains the following statement:

I have entered into my employment relationship with the City of St. Ann voluntarily and acknowledge that there is no guaranteed length of employment. Accordingly I understand that either the City or I can terminate the relationship at will, or without cause, at any time. This status can be altered only by a written agreement signed by both the employee and the Mayor of St. Ann.

The mayor makes much of this acknowledgment, but it is not sufficient to resolve the case because it does not answer the question of where the power of termination is lodged. If Ordinance 2020 controls, then the decision is vested in the mayor alone, provided that the marshal agrees. If Section 79.240 governs, the Board of Aldermen is the effective decisionmaker, either on recommendation of the mayor or by two-thirds vote without the participation of the mayor. The employee, in either event, is an employee at will because he or she can be terminated for any reason, or for no reason at all, by the appropriate authority. *Russell v. City of Raytown,* 544 S.W.2d 48, 51 (Mo.App. 1976).

The mayor strongly emphasizes the case of *Barnes v. City of Lawson,* 820 S.W.2d 598 (Mo.App. W.D.1991), which holds that a police officer of a city of the fourth class who was hired by the chief of police without, so far as the report shows, the participation of either the mayor or of the board of aldermen, was not entitled to the procedures of Section 79.240, and could be effectively terminated by the chief without recourse by the board of aldermen. *Id.* at 600. The case is helpful to the mayor, but it is not controlling because the plaintiff was not clearly an "appointive officer" within the compass of Sections 79.230 and 79.240. Cf. *Miller v. City of Macon,* 845 S.W.2d 113 (Mo.App. W.D.1993).

The mayor also cites *Carter v. City of Pagedale,* 982 S.W.2d 744 (Mo.App. E.D. 1998). There the governing ordinance provided for the appointment of the chief of police by the board of aldermen. The case involved a challenge by the mayor to the ordinance, and no termination was in issue. The opinion held that the provision for appointment by the board was invalid because it divested the mayor of the power of appointment conferred by Section 79.230. *Id.* at 746–47. The opinion points out that, if there is a conflict between a city ordinance and a state statute, the statute controls. *Id. Carter* raises substantial doubts as to the validity of the ordinance in effect at the time Mantle was hired and perhaps is more helpful to Mantle than to the mayor.

Mantle adduces *State ex rel. Gorris v. Mussman,* 612 S.W.2d 357 (Mo.App.E.D. 1980) involving the termination of a police officer of a city of the fourth class, initially

by resolution of the board of aldermen, by vote short of two-thirds of the membership. The mayor, who was present at the meeting, then announced that he concurred in the decision. This court held that this procedure satisfied the requirements of joint participation in terminations required by Section 79.240, and that there was no significance in the circumstance that the mayor's action followed the action of the board. *Id.* at 362. From this holding it is argued that the mayor's presence, and his signing of the minutes of the meeting at which Mantle was first selected, made the appointment essentially the appointment of the mayor.

The mayor replies by citing *State ex rel. City of Centralia v. Wilder*, 211 Mo. 305, 109 S.W. 574 (1908), which is aged but well worthy of our attention not only because it is an opinion of our Supreme Court, but also because the author was the highly respected Judge Henry Lamm. The Court held that the signature of the mayor of a city of the fourth class to the minutes of a meeting of the board of aldermen did not effect the mayor's approval of an ordinance adopted at that meeting. *Id.* at 577–78. The case, however, is not on all fours because Section 79.140 conferred veto power over ordinances on the mayor and required that he either sign an ordinance presented to him or return it with his objections. The mere signing of the minutes would not comply with this statutory requirement. Mantle's initial hiring was accomplished more informally, by motion.

We conclude, on review of the authorities, that Mantle could be terminated only by adherence to the procedures of Section 79.240. Section 79.230 specifically includes "night watchman," and so police officers are of a class which could come within its protection. The provisions of Section 79.240 are not expressly limited to officers appointed by the mayor. Although concepts of estoppel are only guardedly applied to mayors or other public officials, it is not unreasonable to expect the mayor to speak up if he believes the board of aldermen is trespassing upon his authority. Failing such indication, Mantle had a valuable right to hold his position until terminated by proper authority in the manner prescribed by the governing statute and could reasonably believe that any termination required the approval of the Board of Aldermen. This procedureal protection continued during the entire 20 plus years of his tenure, and applies even though he has no protection against termination so long as the proper procedures are followed.

We conclude that the court below properly decided the legal issues. The judgment is affirmed.

MARY R. RUSSELL, Judge and MARY K. HOFF, Judge.